UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

BRITTANY ADKINS, )
)
            Plaintiff, )
)
         vs. ) No. 1:14-cv-00029-TAB-WTL
)
STATE FARM FIRE AND CASUALTY )
COMPANY, )
)
           Defendant.

**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I. Introduction**

Defendant State Farm Fire and Casualty Company filed a motion for summary judgment against Plaintiff Brittany Adkins in her lawsuit for insurance benefits. Adkins[1] seeks a declaratory judgment that she is entitled to the proceeds of a home fire insurance policy obtained by her spouse Tim Adkins prior to his death. State Farm argues that Adkins was not a named insured on the policy, was not a resident of the home at the time or otherwise covered under the policy and thus is not entitled to any proceeds. For the reasons stated below, the Court grants State Farm's motion for summary judgment [Filing No. 25].

**II. Facts**

Tim Adkins and Brittany Adkins, married in 1999, purchased a home at 629 N. Lincoln Street, Greensburg, Indiana.[2] The deed to the home included both Tim Adkins' and Adkins'

---

[1] Adkins refers to Brittany Adkins only.

[2] In her deposition, Adkins asserts that the couple purchased the home in March 2001. [Filing No. 27-2, at ECF p. 4.] Tim Adkins' Netquote application, however, indicates that the couple

1

names.  [Filing No. 27-2, at ECF p.4.]  On December 30, 2008, Tim Adkins completed a Netquote Application and submitted it online to obtain a quote for a State Farm homeowner's insurance policy for the 629 Lincoln Street home.[3]  After a State Farm representative contacted him, Tim Adkins submitted a homeowner's application to State Farm.  The State Farm homeowner's application and Netquote application indicated that Tim Adkins owned the home.  No co-owner was listed on the applications.  [Filing No. 27-5, at ECF p. 5; Filing No. 27-5, at ECF p. 7.]

On February 15, 2013, Tim Adkins filed for divorce from Adkins in Decatur, Indiana.  Four days later, Adkins applied for a State Farm renter's policy for an apartment she leased.  The renter's policy named only Adkins as the insured and became effective February 19, 2013.  [Filing No. 27-5, at ECF p. 2.]  In February 2013, Adkins moved out of the 629 Lincoln Street residence and into her apartment located at 906 W. Gaston Dr., Apt. B, Greensburg, Indiana.  [Filing No. 27-5, at ECF p. 2.]  She notified State Farm of her new apartment address on February 19, 2013.  Adkins also notified State Farm that the insurance billing on her auto policy should be separated from Tim Adkins' auto policy.  In addition, Adkins requested the bills for her vehicle be sent to her new address.  [Filing No. 27-5, at ECF p. 3; Filing No. 27-5, at ECF p. 9.]

---

resided at the home starting December 31, 2003.  [Filing No. 27-5, at ECF p. 5.]  For the purpose of this motion, the parties agree that the couple purchased the home together.

[3] The couple had owned the home for a couple of years before Tim Adkins submitted his application for State Farm homeowner's insurance.  Neither Adkins nor State Farm submitted evidence of a previous homeowner's insurance policy on the home.  However, Tim Adkins' Netquote application indicates that the home was previously insured with Travelers Insurance Company.  The specifics of that policy were not submitted into evidence.

In moving to her new address, Adkins moved some of her personal property, leaving her large exercise equipment and a few other large items at the 629 Lincoln Street home. Adkins also removed her name from all utility services associated with the Lincoln Street home and formally changed her address through the Postal Service to 906 W. Gaston Dr., Apt. B, Greensburg, Indiana. [Filing No. 26, at ECF p. 4.] She further changed the address for her credit card from 629 Lincoln Street to 906 W. Gaston Dr., though she still received some mail at 629 Lincoln Street. After she moved out, Adkins would occasionally stop by the Lincoln Street home to retrieve some of her or her children's personal property to bring to her apartment. At the time, Tim Adkins had not changed the locks to the home and kept the back door unlocked. Even so, Adkins never entered the premises to collect her things without Tim Adkins' knowledge. [Filing No. 29-2, at ECF p. 9.]

After separating, Tim Adkins and Adkins shared custody of their children. Tim Adkins and Adkins were to attend a court hearing on June 17, 2013, to address child support and financial issues in the divorce proceeding. However, on June 3, 2013, Tim Adkins set the 629 Lincoln Street home on fire by pouring ignitable liquid in the home, and intentionally lighting it. He then committed suicide. [Filing No. 27-5, at ECF p. 2.] Adkins asserts that the night before the fire, she and Tim Adkins discussed over a phone call and text messages potentially reconciling their marriage. [Filing No. 27-5, at ECF p. 39.] However, Adkins indicates that she was not ready to reconcile at the time, but hoped that in the future she and Tim Adkins could do so. [Filing No. 29-2, at ECF p. 2.]

State Farm made payments to interested parties after the fire. On August 29, 2013, State Farm paid Wells Fargo, which was the mortgagee listed on the homeowner's policy at the time, $26,921 for the remaining balance of the mortgage. [Filing No. 27-1, at ECF p. 7.] Adkins

presented a claim to State Farm under her renter's policy for personal property stored at the 629 Lincoln Street home that was destroyed by the fire.[4] [Filing No. 27-1, at ECF p. 3.] State Farm paid Adkins and her attorney $20,120 under Adkins' rental policy for the actual cash value of her interest in personal property damaged by the fire on September 24, 2013. [Filing No. 27-1, at ECF p. 3, 9.] State Farm issued two more payments to Adkins and her attorney for her personal property in the amount of $14,267.32 and $7,864.68. [Filing No. 27-1, at ECF p. 3, 11, 13.] Adkins subsequently filed a claim under Tim Adkins' homeowner's insurance policy for the loss of the residence and for personal property on the premises, which State Farm denied.

## III. Discussion

### A. Declaratory relief

State Farm argues that there is no genuine issue of material fact as to Adkins' lack of coverage under the policy. Indiana law governs this insurance dispute, and an insurance policy is subject to the same rules of construction as other contracts. *Morris v. Economy Fire & Cas. Co.*, 848 N.E.2d 663, 666 (Ind. 2006). State Farm asserts that the policy cannot be interpreted to cover Adkins because she was not a named insured under Tim Adkins' homeowner's policy, she was not a party to the policy as a resident of the insured home, and Adkins did not otherwise qualify as an insured under the policy.

State Farm's homeowner's insurance policy expressly named Tim Adkins as the policyholder and did not name Adkins anywhere in the policy. [Filing No. 27-4, at ECF p. 4.] According to State Farm, the policy clearly and unambiguously limits its obligations to named insureds and thus, it is undisputed that Adkins is not entitled to coverage. Such unambiguous

---

[4] Her coverage under the renter's policy was not restricted by the location of the personal property.

language in a policy should be interpreted under its plain and ordinary meaning and enforced according to its terms. *Morris*, 848 N.E.2d at 666; *Short v. North Pointe Ins. Co.,* No. 1:11-cv-00545-SEB-MJD, 2013 WL 1828024, at *6 (S.D. Ind. Apr. 29, 2013). Adkins contends that she should be considered a named insured under the policy because it is undisputed that she was Tim Adkins' spouse. Moreover, she asserts that there is a genuine dispute as to whether she was a resident of his household, which would extend coverage to her under the policy. Adkins points to the policy's definition provision, which clearly states a spouse is included as a named insured if she is a resident of the policyholder's household. [Filing No. 27-4, at ECF p. 8.]

Material facts establish Adkins did not reside in the Lincoln Street home. Most notably, Adkins admitted in her interrogatory response that she was not a resident of 629 Lincoln Street at the time of the fire. [Filing No. 30, at ECF p. 4.] Adkins also did not permanently or continuously dwell at 629 Lincoln Street. *See Armstrong v. Federated Mut. Ins. Co.,* 785 N.E.2d 284, 288 (Ind. Ct. App. 2003) ("[T]he average juror would understand the term ['resident'] to mean, 'to dwell permanently or continuously: occupy a place as one's legal domicile.'"). Adkins testified that she moved out of the residence on February 19, 2013, she obtained a State Farm renter's insurance policy for her new apartment, and she was the only named insured in this renter's policy. Adkins formally changed her mailing address from 629 N. Lincoln Street to 906 W. Gaston Drive, changed her address for her credit card to her apartment, and removed her name from the utilities at the 629 Lincoln Street residence. [Filing No. 26, at ECF p. 4; Filing No. 28, at ECF p. 9; Filing No. 29-2, at ECF p. 6.] Likewise, she contacted State Farm to separate her auto policy from Tim Adkins' auto policy with her related bills to be mailed to her new apartment address. Adkins further testified that she intended to use the funds from the

divorce to purchase her own home. She had even met with a realtor to view homes. [Filing No. 29-2, at ECF p. 4.]

Adkins argues that she still maintained a presence at 629 Lincoln Street, which supports her status as a resident. She received mail there, was able to enter the home when needed, and had personal property at the residence. Her argument is unavailing. It is undisputed that Adkins wanted her mail to be delivered to her new apartment address and that she unintentionally received mail at 629 Lincoln Street. [Filing No. 29-2, at ECF p. 9.] Even though Tim Adkins left the back door unlocked during this time, Adkins testified that she only visited 629 Lincoln Street to move her personal property and only did so after notifying Tim Adkins. [Filing No. 29-2, at ECF p. 8-9.] The personal property remaining at the 629 Lincoln Street residence included items she did not have space for in her apartment but that she intended to move these items to her new home when she was able to afford a larger residence. [Filing No. 29-2, at ECF p. 4-5.] Consequently, the material facts show that any presence Adkins maintained at the 629 Lincoln Street home was not intentional.

Even so, Adkins asserts that she may still be considered a resident of 629 Lincoln Street. Citing *Johnson v. Payne,* 549 N.E.2d 48, 50 (Ind. Ct. App. 1990), Adkins argues that her insurance coverage should have continued because reconciliation was a possibility. According to her interrogatories, Adkins was not certain whether she wanted to divorce her husband and had communications with Tim Adkins about reuniting their marriage. [Filing No. 29-1, at ECF p. 2.] In an affidavit, Adkins reported that the night before the fire Tim Adkins told her that he thought he was dying and that he wanted to reunite their marriage. The couple talked about him staying at her apartment to spend more time with kids. However, Adkins did not speak with anyone about the prospect of reconciliation and she testified she would not return to the marital

6

residence. There were no other steps toward reconciliation between her and Tim Adkins. [Filing No. 27-3, at ECF p. 39; Filing No. 29-2, at ECF p. 2.]

While *Payne* extends insurance coverage to a spouse temporarily separated from the marital residence, it bars coverage for spouses that separate permanently with no contemplation of reconciliation. *Payne,* 549 N.E.2d at 50. In determining coverage for separated spouses, the Court weighs the evidence to determine intent. *See Allstate Ins. Co. v. Shockley,* 793 F.Supp. 852, 856 (S.D. Ind. 1991) (noting that *Payne* reviewed the spouses' intentions along with other evidence to determine residency). However, the Court's task on summary judgment is not to weigh the evidence, but rather to decide whether there is any material dispute of fact that requires a trial. *Payne v. Pauley,* 337 F.3d 767, 770 (7th Cir. 2003). The evidence reveals one conversation about potential reconciliation.[5] Even construing this evidence in the light most favorable to Adkins, the material facts show that Adkins intended to permanently leave the martial residence. Adkins expressly stated that she did not consider herself a resident of 629 Lincoln Street at the time of the fire, and she had no intention of residing there after she and Tim Adkins separated. According her affidavit, Adkins told Tim Adkins the night before the fire that she was not going back to the Lincoln Street home. [Filing No. 27-3, at ECF p. 39.] It is evident from Adkins' own statements that her move from the marital home was permanent.

Adkins' conduct further supports her intention to permanently leave the residence. Adkins rented an apartment, changed her address for her insurance policies and credit cards, formally changed her address with the Postal Service, took her name off of the 629 Lincoln

---

[5] In her affidavit, Adkins asserts that she told Tim Adkins that she did not want to try a relationship with him. [Filing No. 27-5, at ECF p. 39.] She later clarified in her deposition that she was not ready to try a relationship with him at the time, but she was still hopeful of reuniting in the future. [Filing No. 29-2, at ECF p. 2.]

7

Street utilities, and looked at new homes.[6] Even if Tim Adkins and Adkins contemplated reconciliation, there remains no dispute that Adkins had no intention of ever living at 629 Lincoln Street again. Thus, no genuine issue of material fact exists as to whether Adkins was a resident of 629 Lincoln Street and covered under Tim Adkins' insurance policy.

  *B. Negligence claim*

  Notwithstanding, Adkins asserts that State Farm was negligent because it had knowledge that she co-owned the Lincoln Street home, and as a result, it should have covered her under the homeowner's insurance policy. According to Adkins, State Farm was insuring the owner of the home and should have taken reasonable steps to determine who owned the home. Adkins argues that reasonable steps required more than merely reviewing Tim Adkins' Netquote application and State Farm application for homeowner's insurance. Moreover, she argues that State Farm had to have had knowledge that Adkins and her children lived at the home, and if it did not have this knowledge, then Adkins contends that State Farm was negligent. Likewise, Adkins argues that she reasonably believed that State Farm's insurance would cover her as the 629 Lincoln Street home was owned by both Adkins and Tim Adkins, and they both paid premiums on the insurance.[7] [Filing No. 28, at ECF p. 12.]

  Adkins' amended complaint does not include a negligence claim against State Farm. In fact, the only claim Adkins asserts in her complaint is for declaratory relief. [Filing No. 20.]

---

[6] When the couple separated in 2005 and in 2008, Adkins moved in with her parents as the couple attempted to reconcile. [Filing No. 27-2, at ECF p. 7-8.] Tellingly, the 2013 separation was the first time Adkins moved into her own separate residence.

[7] According to Adkins, State Farm and Wells Fargo allegedly discussed the 629 Lincoln Street home policy and who owned the home. However, she provided no evidence to support this assertion. [Filing No. 29-2, at ECF p. 8.] To survive a properly supported motion for summary judgment, the nonmoving party must present more than a mere scintilla of evidence to show a genuine issue of material fact. *Chaib v. Indiana*, 744 F.3d 974, 981 (7th Cir. 2014). Adkins fails to present any evidence. Consequently, this claim fails.

Thus, Adkins' arguments concerning negligence are waived. *Huff v. Reichert*, 744 F.3d 999, 1010 (7th Cir. 2014) (citing *Fednav Int'l Ltd. v. Cont'l Ins. Co.*, 624 F.3d 834, 841 (7th Cir. 2010) ("We have found waiver where a liberal reading of the complaint and argument in the district court yields no signs of the arguments the plaintiff is now presenting.")).

Even if Adkins asserted negligence in her amended complaint, her claim would not survive summary judgment. For one, Adkins presents no evidence to support her claim that State Farm had knowledge of her ownership interest or that she expressed to State Farm an interest in being covered under the policy. In fact, her deposition expressly indicates that she had no communication with State Farm concerning Tim Adkins' insurance policy prior to the fire, despite the fact that she was aware of the policy. [Filing No. 29-2, at ECF p. 4, 8.] Instead, Adkins testified that the only communication she had with State Farm prior to the fire related to her separate renter's and auto insurance policies. [Filing No. 29-2, at ECF p. 8.] Thus, there is no dispute that Adkins failed to express an interest to State Farm in being covered under the policy.

Moreover, there is no evidence to support her contention that State Farm should have known Adkins co-owned the home. State Farm does not dispute that Adkins co-owned the 629 Lincoln Street home. However, it issued a policy based on Tim Adkins' application and request. State Farm permissibly relied on Tim Adkins' application. *Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664, 674 (Ind. 1997), stands for the proposition that an insurer may rely on factual representations in an insurance application without investigating their truthfulness. To be sure, *Guzorek* makes clear that an insurer has no duty to look beneath the surface of the representations on the application. *Allied Property and Cas. Ins. Co. v. Good*, 938 N.E.2d 227, 232 (Ind. Ct. App. 2010) (citing *Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664, 674 (Ind.

1997))). Thus, State Farm had no duty to take additional steps to investigate Tim Adkins' assertion that he was the owner of the home. Moreover, neither Tim Adkins nor Adkins informed State Farm that she co-owned the home.

Relying on *United Farm Bureau Mut. Ins. Co. v. Brantley*, 375 N.E.2d 235 (Ind. Ct. App. 1978), Adkins argues that the Court must consider what she believed was the insurer's intention by the terms of the contract. However, Adkins' case is distinguishable from *Brantley*. In *Brantley,* the spouses expressly asked their agent to insure them under the relevant auto policy and the agent knew the spouses' intent was to include one another under their insurance policy. Here, Tim Adkins and Adkins did not indicate to State Farm any interest in including Adkins under the homeowner's insurance policy and the agent had no knowledge of the couple's intent. An agent cannot be held negligent for facts to which she was not privy. *See United Farm Bureau Mut. Ins. Co. v. Ludwig,* 744 N.E.2d 1061, 1063 (Ind. Ct. App. 2001) (finding an insurance company was not negligent when there was no designated evidence showing the company knew the insurer intended to include a person as a named insurer under the issued policy). Thus, Adkins' argument fails. The undisputed material facts demonstrate State Farm was not negligent.

## IV. Conclusion

For the foregoing reasons, the Court grants Defendant State Farm's motion for summary judgment [Filing No. 25] in its entirety and judgment will be entered accordingly.

Date: 1/23/2015

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

Jan N. Campbell
LEEUW OBERLIES & CAMPBELL, P.C.
jcampbell@indylegal.net

Jeffrey R. Oberlies
LEEUW OBERLIES & CAMPBELL, P.C.
joberlies@indylegal.net

Janis E. Steck
Leeuw Oberlies & Campbell, P.C.
jsteck@indylegal.net

R. Robert Yeager
YEAGER GOOD & BALDWIN
bob@yeagerbaldwin.com